UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.

MARK NASH

Defendant.
_____

REPORT, RECOMMENDATION AND ORDER

Case No. 1:23-cr-0156-JLS-JJM

        Defendant Mark Nash is charged in a December 19, 2023 Indictment [1][1] with production and possession of child pornography. Before the court is Nash's motion [26] for various forms of relief, including suppression of evidence derived from the search of a cell phone and suppression of his statements to police. The motion has been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [16]. Having considered the parties' submissions [26, 32] and heard oral argument on December 4, 2024 [35], for the following reasons I recommend that Nash's motion be granted to the extent that he seeks suppression of evidence obtained as a result of the search of the cell phone, and I order that it otherwise be denied as moot.

## DISCUSSION

        The parties confirmed at oral argument that, with the exception of Nash's request for suppression of evidence obtained as a result of the search of his cell phone, the remainder of his motion has been resolved. Therefore, only those facts necessary for resolution of the remaining issue need be discussed.

---

[1]     Bracketed references ae to CM/ECF docket entries, and page references are to CM/ECF pagination.

On April 4, 2023 Buffalo Police Detective James McMahon applied for a warrant authorizing the search of "One Apple Iphone XR, white in color cellular telephone bearing no assigned phone number, belonging to Mark Nash". [36] at 1. In support of the application, he stated that "[o]n Monday, April 4th, 2023, at approximately 5:30 AM, Witness, Latoya Nash, did go into Mark Nash's white Iphone XR. Upon looking through the phone, Latoya Nash did observe a naked photo of [Minor Victim 1]. Latoya Nash did take a screenshot of the photo, utilizing her own phone". Id. at 2, ¶4. That evening, Buffalo City Court Judge Gary Wilson granted the application and issued a warrant authorizing the search of "One Apple Iphone XR, white in color, cellular telephone bearing no assigned phone number, belonging to Mark Nash". Id. at 4.[2]

During a traffic stop of Nash's vehicle on April 12, 2023 (the validity of which Nash contests), "[o]fficers seized three cell phones from the vehicle". Government's Response [32] at 5. However, whether or not police were entitled to conduct a traffic stop or to seize the cell phones (issues which I need not decide), they clearly could not *search* them absent a warrant. See United States v. Chierchio, 2022 WL 523603, at *10 (E.D.N.Y. 2022) ("the temporary seizure of electronic devices is justified where the officers have probable cause to believe that they contain or constitute evidence so long as the government does not search a device until after a warrant has been obtained"); United States v. Babilonia, 854 F.3d 163, 180 (2d Cir. 2017) ("we are not troubled by the agents' warrantless seizure of Key's cell phones . . . as the agents did not search the electronic devices until after a warrant had been obtained");

---

[2] Although the warrant is undated and Judge Wilson's signature is illegible, the parties have confirmed this information.

United States v. Smith, 967 F.3d 198, 208-09 (2d Cir. 2020) (police were entitled to "seize the tablet so that they could apply for a warrant to search its contents").

Referring to the cell phone named in the search warrant as the "Subject Device" (government's Response [32] at 2), the government states that "Detective McMahon seized the Subject Device and later searched it pursuant to the . . . search warrant. A forensic extraction of the Subject Device revealed three series of child pornography depicting Minor Victim 1". Id. at 2-3. Although Nash claimed that "the phone that officers seized and searched was not the phone that was described in the warrant" (id. at 5), the government dismissed that claim as "meritless", insisting that "[t]he police obtained a warrant to seize a white iPhone XR belonging to the defendant", and that "[t]here is no factual basis to believe that the police searched a device not authorized by the warrant". Id. at 6, 8.

It was not until *I* inquired that the government finally admitted that the cell phone that was searched was not the *white* cell phone described in the search warrant, but was instead a "*black* iPhone XR with blue and black case". Id. (emphasis added); [38]. It should go without saying, but I'll say it anyway: "[b]lack is not white". State ex rel. Jones v. Brown, 92 S.W.2d 718, 723 (Sup. Ct. Mo. 1936).

The government argues that "even if the police inadvertently seized and searched the wrong iPhone XR from the defendant, the good faith exception would apply. As the Court is well-aware, the Fourth Amendment exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was based on 'objective good faith.' See United States v. Leon, 468 U.S. 897, 926 (1984)". Government's Response [32] at 8. However, Leon dealt with the situation of "objectively reasonable reliance on a subsequently invalidated search warrant" (468 U.S. at 922), whereas here Judge Wilson's

search warrant was not invalidated, it was simply ignored. Not only did the police ignore the fact that the warrant specified a *white* cell phone, but they also ignored Latoya Nash, who "was present and told Detective McMahon that he had the wrong iPhone". Government's Response [32] at 9.

"[T]he good-faith inquiry . . . is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of all of the circumstances . . . The burden is on the government to demonstrate the objective reasonableness of the officers' good faith." United States v. Bershchansky, 788 F.3d 102, 113 (2d Cir. 2015). Bershchansky involved a search warrant which "clearly authorized the search of Apartment 2, and yet the agents searched Apartment 1". Id. The court noted that "[a] reasonable police officer would have recognized that the warrant authorized a search only of Apartment 2, he would not have proceeded to search an unauthorized apartment, and he would have called the magistrate judge for permission to search Apartment 1. Rather than obtain authorization to search Apartment 1, the agents bypassed constitutionally-mandated procedure and took a shortcut." Id.

Concluding that "the search of Bershchansky's apartment was not objectively reasonable and that the agents could not have relied on the warrant in good faith", the court held that "the benefits of deterring the agents' unlawful conduct outweigh the costs of suppressing the evidence obtained . . . . [T]he agents' significant errors constitute the type of conduct that is sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system". Id. at 113, 114. The same principle applies here: just as the agents in Bershchansky could not reasonably believe that a warrant authorizing the search of Apartment 2 justified their search of Apartment 1, the police in this

case could not reasonably believe that Judge Wilson's warrant authorizing the search of a white cell phone justified their search of a black cell phone.

At oral argument, the government argued for the first time (and without any basis in the record) that upon realizing that they intended to search the black cell phone rather than the white cell phone specified in the search warrant, police consulted with a supervising Assistant District Attorney, who approved the search of that phone. However, I "need not consider an argument raised for the first time at oral argument". Standard General L.P. v. Travelers Indemnity Company of Connecticut, 261 F. Supp. 3d 502, 511 (S.D.N.Y. 2017). In any event, that argument is unpersuasive: the Supreme Court "long has insisted that inferences of probable cause be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime". Shadwick v. City of Tampa, 407 U.S. 345, 350 (1972).

Accordingly, for the reasons discussed in Bershchansky, all evidence obtained as a result of the search of the black cell phone should be suppressed.

## CONCLUSION

For the reasons discussed, I recommend that Nash's motion [26] be granted to the extent that it seeks suppression of evidence obtained as a result of the search of the black cellphone, and I order that the motion otherwise be denied as moot. Unless otherwise ordered by Judge Sinatra, objections to this Report, Recommendation and Order shall be filed by December 20, 2024.

One final note. I am deeply troubled by the attorney for the government's insistence that the police had not searched a cell phone other than that identified in the search

warrant, when he knew that was not true. "The Court expects all attorneys who appear before it to conduct themselves with the utmost candor, but that expectation is particularly keen when it comes to attorneys representing the United States of America." Hassoun v. Searls, 524 F. Supp. 3d 101, 110 (W.D.N.Y. 2021). Based on my prior experience with this attorney, I am confident that this misrepresentation is not reflective of his integrity in general. Nevertheless, it cannot be left unaddressed.

Accordingly, by December 20, 2024 the attorney for the government shall either write letters to Nash and his attorney (copying the court) apologizing for his conduct, or explain to me in writing why he should not have to do so. "[R]equiring counsel to apologize for errant conduct can have an exquisite impact and, in turn, a strong deterrent effect. A learned professional who is required by a tribunal to apologize for his conduct will not soon forget either the requirement that he apologize or the conduct that prompted the sanction." Crank v. Crank, 1998 WL 713273, at *6 (N.D. Tex. 1998), aff'd, 194 F.3d 1309 (5th Cir. 1999).

Any requests for extension of the deadlines stated herein must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each

objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

Dated: December 6, 2024

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge